# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

CHAUNCEY BENNETT      *

Plaintiff      *

v      *      Civil Action No. JKB-19-105

WARDEN RICKY FOXWELL, ECI      *

Defendant      *

***

## MEMORANDUM OPINION

Plaintiff Chauncy Bennett is an inmate at Eastern Correctional Institution (ECI). He alleges in his Complaint filed pursuant to 42 U.S.C. § 1983 that nude photographs sent to him in prison were improperly confiscated and that on October 25, 2018, he was placed in handcuffs and leg shackles from 8:15 a.m. to 3:20 p.m. while attending a civil hearing on his Petition for Judicial Review in the Circuit Court for Somerset County, Maryland. He alleges the handcuffs caused him wrist pain which has been "overlook[ed] for years." Compl. ECF No. 1. Ricky Foxwell, former Warden of ECI, has filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 14. Bennett has filed a response in opposition to Foxwell's dispositive motion. ECF No. 16. Bennett later filed two separate pleadings captioned as Motions for Summary Judgment. ECF Nos. 18, 19.[1]

This case is ripe for disposition and no hearing is necessary. Local Rule 105.6 (D. Md. 2018). For the reasons to follow, Bennett's Motions for Summary Judgment will be denied. Foxwell's Motion to Dismiss or for Summary Judgment, treated as a Motion for Summary

---

[1] Bennett was informed he may file verified exhibits and declarations with his opposition response and the consequences of failing to do so. ECF No. 15. He has not filed any declarations with his opposition response or motions for summary judgment.

Judgment, will be granted.

## BACKGROUND

Bennett filed this Complaint on January 11, 2019. On January 31, 2019, the Court granted Bennett an opportunity to supplement the complaint and directed him to explain how Warden Foxwell was involved in the matters alleged, indicate the basis for his discrimination claim, and state who placed him in handcuffs. ECF No. 6.

On February 25, 2019, Bennett submitted correspondence listing the First, Fourth, Eighth and Fourteenth Amendments, and "Equal Protection Clause and Discrimination" as claims. ECF No. 7 ¶1. He asserted Warden Foxwell had "knowledge of the photos due to the chain of command by mailroom, Commissioner, IGO hearing, Judicial Review in the Circuit Court for Somerset County…." ECF No. 7 ¶3. Bennett also alleged he was discriminated against because "everyone else is receiving" their photographs, while his were withheld for more than two years, and "its duly noted we can obtain naked materials." *Id.* As relief, Bennett asks for return of the photographs, punitive damages of $100,000, compensatory damages of $100,000, and $100,000 for "emotional stress." ECF No. 1 at 4.

On April 29, 2019, Bennett filed a paper titled "Amending Complaint," in which he stated he was offered the photographs by Lieutenant Ward on April 22, 2019 if he would "sign off" on his grievance before the Inmate Grievance Office (IGO). ECF No. 11. Bennett refused because he alleges confiscation of the photographs caused him financial and psychological harm. *Id.*

## APPLICABLE LEGAL STANDARD

A Motion for Summary Judgment is governed by Federal Rule of Civil Procedure 56(a) which provides that: "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). A court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

**DISCUSSION**

A suit under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). To state a claim under § 1983, a plaintiff must allege that (1) a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). To the extent Bennett intends to raise a condition-of-confinement claim for the handcuffing and an inadequate medical care claim for his wrist pain under the Eighth Amendment,

3

Foxwell raises Eleventh Amendment immunity as an affirmative defense, argues that he was not personally involved in these matters, and asserts the facts alleged do not support an Eighth Amendment claim. ECF No. 14.

## I. Eleventh Amendment Immunity

Preliminarily, Foxwell moves to dismiss the claims against him in his official capacity. Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and departments are immune from suits for damages in federal court brought by its citizens or the citizens of another state, unless it consents. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Bd. of Trs. of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001). "It is clear, of course, that in the absence of consent, a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Id.* (citing *Florida Department of Health v. Florida Nursing Home Ass'n.*, 450 U.S. 147 (1981) (per curiam)).

The Eleventh Amendment also bars claims against state employees in their official capacities. *See Gray v. Laws,* 51 F.3d 426, 430 (4th Cir. 1995) ("state officers acting in their official capacity are also entitled to Eleventh Amendment protection"). "A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). As Warden of ECI, Foxwell was a state employee, and to the extent he is sued in his official capacity as Warden, he is entitled to summary judgment as to Bennett's claims for monetary damages.

Although Bennett does not indicate whether he is also suing Foxwell in his individual capacity, the claims are nevertheless unavailing as discussed below.

**II. Claim of Handcuffing and Medical Care.**

"The Eighth Amendment's prohibition on cruel and unusual punishments imposes certain basic duties on prison officials." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Those duties "include maintaining humane conditions of confinement, including the provision of adequate medical care and . . . 'reasonable measures to guarantee the safety of the inmates.'" *Id.* "[N]ot every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015). A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability is established. *See Raynor*, 817 F.3d at 127.

For liability under 42 U.S.C. § 1983, the defendant must have been personally involved in the alleged violation. *Wright v Collins*, 766 F.2d 841, 850 (4th Cir. 1985); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977); *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994); *see also Rizzo v. Goode,* 423 U.S. 362, 370-71 (1976). Under certain circumstances, supervisors and administrators may be held culpable under principles of supervisory liability. *See Baynard v. Malone,* 268 F.3d 228, 235 (4th Cir. 2001) ("Supervisory liability under 42 U.S.C. § 1983 must be supported with evidence: '1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; 2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and 3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.'") (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

With his Motion for Summary Judgment, Foxwell filed affidavits and verified exhibits.

ECF No. 14. Foxwell, who was Warden of ECI from January 4, 2017, until his retirement on December 31, 2018, denies having knowledge about Bennett's handcuffing complaint. Foxwell Decl. ECF 14-2 ¶¶ 1, 6.

Foxwell states that medical services are provided to ECI inmates by a private contractor. *Id*. ¶ 2. Foxwell had no personal involvement in Bennett's medical care and had no authority to make medical decisions about inmate medical care. *Id.* Foxwell explains that he and his staff relied on the expertise and reports of medical providers when responding to inmate complaints about inmate medical treatment. *Id.* Foxwell denies interfering with, hindering or delaying medical treatment to Bennett. *Id*. ¶5.

To the extent Bennett complains that he was incorrectly handcuffed from the back, instead of the front, Foxwell's exhibits show that Bennett filed six grievances to the Inmate Grievance Office (IGO) about his purported medical need to be handcuffed only from the front. Decl. of Samiyah Hassan, ECF 14-4. The grievances were dismissed as beyond the jurisdiction of the IGO because they constituted a complaint against contractual medical staff, not Division of Correction employees or officials, and because Bennett failed to provide additional information (a copy of his medical order requiring front cuffing). *Id; see also* ECF No. 7-1 at 3. Bennett asserts that this information does not reflect a 2015 front-cuffing order. ECF No. 16 ¶1. Bennett attaches as an exhibit, ARP No. ECI 0076-15, which states that in 2014 he had an order to be handcuffed from the front. The exhibit shows that on February 13, 2015, the front cuffing order was discontinued. ECF 16-1 at 2. This exhibit is immaterial to the events of October 25, 2018.

Bennett does not contend that Foxwell participated in the handcuffing, that he was handcuffed by a Division of Correction employee, or that Foxwell was aware of or interfered with his medical need for front cuffing. ECF No. 1. Bennett's summary allegation about the "chain of

command," made in the context of his photograph claim, even if meant to apply to the handcuffing and medical claims, falls far short of satisfying the standard for conferring supervisory liability. Thus, even when the evidence is viewed in the light most favorable to Bennett, there is no genuine dispute of material fact regarding Foxwell's participation. Accordingly, Foxwell is entitled to summary judgment in his favor as to the handcuffing and medical claims.

**III. Photographs**

Foxwell asserts that he is entitled to dismissal or summary judgment as to the photograph confiscation claim on several grounds, including Eleventh Amendment immunity, lack of exhaustion, qualified immunity, and lack of personal involvement in the matters alleged.

On October 24, 2016, Tiara Kelly sent Bennett 189 photographs. Of these 43 were delivered to Bennett and the remaining 146 were withheld as contraband. ECF No. 1 at 4; ECF No. 1-2; ECF No. 17-1. At that time, institutional directive ECI.250.0001.05. E(a)[2] defined nude photographs as contraband to be returned to the sender. Decl. of Susan Schumacher, ECF No. 14-3 at 5. Bennett appealed the decision to withhold some of the photographs to the Warden. Because Foxwell had delegated decisions whether mail contained contraband, Warden Walter, the Assistant Warden, denied the appeal. ECF No. 14-2; ECF No. 14 at 3.

Bennett filed a grievance with the IGO on January 6, 2017. ECF 17-1 at 1. After holding a hearing, an administrative law judge dismissed the grievance on March 2, 2018. ECF 17-1 at 1.

On March 30, 2018, Bennett filed a Petition for Judicial Review of the ALJ's determination in the Circuit Court for Somerset County, Maryland, *In the Matter of Chauncey Bennett,* Case No. C-19-CV-18-000080. ECF 17-1; *see also* http://casesearch.courts.state.md.us (viewed Jan. 8,

---

[2] This provision included as contraband "polaroid pictures, nude photos (adult or child), photographs depicting bestiality or homosexual acts" as contraband and required that mail containing them be returned to the sender. Facility Directive, ECI.250.0001.05. E(a), ECF No. 14-3 at 5.

7

2020).  While the Petition for Judicial Review was pending, ECI changed its rules about classification of photographs to comply with Maryland state law, COMAR 12.12.20.01, and on January 18, 2018, an information bulletin was issued to reflect the change.  ECF No. 14-3 at 7.

Bennett was transported to the Circuit Court for Somerset County on October 25, 2018, for the hearing on his Petition for Judicial Review.  On October 25, 2018, Judge David Powell remanded Bennett's case to the IGO with instructions to hold a hearing to address how each of the withheld photographs violated COMAR 12.02.20.06 ("'Withholding Mail', 12.02.20.0IB(5) [defining Sexually Explicit Mail] or any other institutional regulation.").  ECF No. 17-1.

In April of 2019, Lt. Evan Ward offered to return the photographs to Bennett, who refused them.  Ward Decl. ECF 14-5 ¶3.  Bennett states that on April 22, 2019, he was told by Lt. Ward that the IGO coordinator wanted him to know "they found the photos, would I sign off."  ECF No. 11 ¶1.  Bennett asserts the "procedure was suggestive, this was bribery the photos are property that was taken without a valid understanding from DPSCS officials."  ECF No. 11 ¶2.  Bennett seems to claim that confiscation of the photographs caused him a "financial burden" and subjected him "to psychological abuse" from his family because they no longer send him money. ECF No. 11¶3; ECF No. 19.  He adds that Tiara Kelly has died since the photographs were sent to him. ECF No. 11¶4; *see also* ECF No. 18

Bennett filed his federal complaint on January 10, 2019, before the IGO administrative proceedings were completed.

A hearing on the remand was held before an ALJ on June 11, 2019.  Decl. of Lt. Evan Ward, ECF No. 14-5.  The ALJ later found that the envelope contained only 71 photographs, and on July 25, 2019, reopened the record to subpoena the other photographs.  ECF No. 17-1 at 3. Bennett states in his Motions for Summary Judgment that in October of 2019, there was a ruling

in his favor, but he has not yet received his photographs or monetary compensation. ECF No. 18 ¶1; ECF No. 19.

Bennett filed his federal complaint before the IGO resolved this claim. Prisoners must pursue their administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. 42 U.S.C. § 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see Moore v. Bennette,* 517 F.3d 717, 725 (4th Cir. 2008) (exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies).

Bennett does not allege Foxwell participated in the confiscation of the photographs. Rather, Bennett seems to base liability on principles of supervisory liability. ("Warden Foxwell had knowledge of the photos due to the chain of command by mailroom, Commissioner, IGO hearing, and Judicial Review in the Circuit Court for Somerset County…" ECF No. 7 ¶3.) Such argument is unavailing for several reasons. First, the Commissioner, IGO director, and the Circuit Court for Somerset County were not subject to Foxwell's supervision. Second, Bennett's summary assertion fails to satisfy his "heavy burden" of proof in a supervisory liability case. *See Slakan,* 737 F.2d at 373 (stating that ordinarily a plaintiff cannot meet the burden of proof by pointing to a single incident or isolated incidents). Importantly, Bennett does not allege or provide evidence that

9

Foxwell had actual or constructive knowledge that a subordinate confiscated the photographs and was engaged in conduct that posed "pervasive and unreasonable risk of constitutional injury" to Bennett, Foxwell's response to such knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practice, or that there exists an affirmative causal link between Foxwell's inaction and the constitutional injury suffered. *Id.* at 373.[3]

Lastly, Bennett alleges no facts to premise a violation of the First or Fourth Amendments. Bennett does not identify other similarly situated inmates who received nude photographs, nor does he allege how Foxwell acted with unlawful discriminatory animus. Accordingly, summary judgment will be entered in favor of Foxwell as to these claims. Bennett's Motions for Summary Judgment are attempts to supplement his opposition response and provide no cause to grant judgment in his favor.

**IV. Qualified Immunity**

To the extent Bennett may intend to assert that the ECI policy in effect when the photographs were confiscated violated his rights under the First Amendment, he does not specify how this policy violates his constitutional rights. While "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large. . . incarceration does not divest prisoners of all constitutional protections." *Shaw v. Murphy*, 532 U.S. 223, 228-29 (2001). "A prison inmate retains those First Amendment rights that are not inconsistent with the status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). While the First Amendment protects prisoners in their sending and receiving of mail, restrictions on the mail are permitted if

---

[3] In light of these determinations, the Court will not discuss Foxwell's mootness argument.

they are "reasonably related to legitimate penological interests." *Thornburgh v. Abbott*, 490 U.S. 401, 409 (1989); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987); *United States. v. Stotts*, 925 F.2d 83, 85-86 (4th Cir. 1991). Foxwell, however, proffers no argument concerning what interests were served by the institutional directive in place when the photographs were received.

In analyzing regulations restricting inmate mail, courts consider (1) whether the regulation is related to a legitimate and neutral governmental objective; (2) whether there are alternatives available to inmates to exercise the right; (3) the impact that accommodating the asserted right will have on guards and other prisoners, and on the allocation of prison resources; and (4) whether the existence of an easy and obvious alternative shows that the regulation is an exaggerated response by prison officials. *Turner,* 482 U.S. at 89-90. A higher level of scrutiny is appropriate for incoming mail, as is the case here. *See Thornburgh,* 490 U.S. at 413.

Foxwell is entitled to qualified immunity as to this claim. When qualified immunity is asserted, the court must consider two questions: (1) whether the facts, viewed in the light most favorable to the plaintiff, show that the official violated a constitutional right, and (2) "whether the right was clearly established," that is, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz,* 533 U.S. 194, 201 (2001); *Henry v. Purnell,* 501 F.3d 374, 377 (4th Cir. 2007). Qualified immunity "shields government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." *Meyers v. Baltimore Cty.*, 713 F.3d 723, 731 (4th Cir. 2013). A court deciding if qualified immunity applies must determine "whether a constitutional violation occurred," and "whether the right violated was clearly established" at the time of the events in question. *Tobey v. Jones*, 706 F.3d 379, 385 (4th Cir. 2013). This is because "[o]fficials are not liable for bad guesses in gray areas;

they are liable for transgressing bright lines." *Raub v. Campbell*, 785 F.3d 876, 881 (4th Cir. 2015) (citations omitted). A defendant cannot have violated clearly established law unless "'existing precedent . . . placed the . . . constitutional question beyond debate.'" *Id.* (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

Bennett does not allege Foxwell personally participated in confiscating the photos nor that he was culpable in his supervisory capacity. Further, Bennett identifies no controlling authority, nor is the court aware of Supreme Court or Fourth Circuit law involving a case with similar facts to support a finding that Foxwell violated clearly established law.

## CONCLUSION

For these reasons, the Court will grant summary judgment in favor of Foxwell. Bennett's Motions for Summary Judgment will be denied. A separate Order follows.

Dated this 9th day of January 2020.

FOR THE COURT:

_____/s/_____
James K. Bredar
Chief Judge